IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHELLEY ANNE S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV895 |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Shelley Anne S. ("Plaintiff") brought this action pursuant to Section 205(g) of

the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review

of a final decision of the Commissioner of Social Security denying her claim for Disability

Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions

for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on May 4, 2022, alleging a disability

onset date of January 12, 2022. (Tr. at 17, 200-06.)[2] Plaintiff's application was denied initially

(Tr. at 88-96, 107-11) and upon reconsideration (Tr. at 97-106, 118-21.) Thereafter, Plaintiff

---

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 122.)  On March 4, 2024, Plaintiff, along with her attorney, attended the subsequent hearing, at which Plaintiff and an impartial vocational expert testified.  (Tr. at 17, 32-87.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 27), and on September 3, 2024, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, the scope of review of such a decision is "extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. (Tr. at 19.) The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 19.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> dysautonomia with chemical sensitivities, cervical radiculopathy, migraines, hypotension, and asthma[.]

(Tr. at 19.) Notably, the ALJ also identified multiple additional impairments as nonsevere, including depression, anxiety, and post-traumatic stress disorder. (Tr. at 20.) The ALJ found at step three that none of Plaintiff's impairments, individually or in combination, met or equaled a disability listing. (Tr. at 20-21.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work, with the following, nonexertional limitations:

> [Plaintiff] can frequently climb ramps and stairs, with no climbing of ladders, ropes, or scaffolds. She can frequently balance, kneel, and crouch, and occasionally stoop and crawl. She can frequently reach with the right upper extremity, provided only occasional overhead reaching and overhead weight-bearing with the bilateral upper extremities. She cannot operate motor vehicles or heavy equipment required as part of the assigned work. She can have occasional exposure to moving mechanical parts, but no exposure to atmospheric conditions, high, exposed places, or toxic or caustic chemical hazards. She can have exposure up to and including moderate noise. She can perform work needing little or no judgment to do simples duties that can be learned on the job or in a short period of time, usually within 30 days, and for which little specific vocational preparation and judgment are needed. She can perform work requiring sustained concentration and persistence for no greater than approximately two-hours at a time. She can perform work that is not frequently performed on an assembly line or at a similar production-pace. She can have occasional changes to the work setting and the manner and method of performing the assigned work. She can interact occasionally with supervisors and coworkers, but only superficial interaction for up to an hour, with no more than ten minutes at a time.

(Tr. at 21-22.) At step four of the analysis, the ALJ found, based on the vocational expert's testimony, that all of Plaintiff's past relevant work exceeded her RFC. (Tr. at 25.) However, the ALJ further determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 25-26.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 26.)

Plaintiff now challenges the ALJ's finding at step five of the analysis. Plaintiff correctly notes that, during the hearing, the hypothetical question posed to the vocational expert conveyed different social limitations than those included in the RFC. As set out above, the RFC assessment provided that Plaintiff could:

> interact occasionally with supervisors and coworkers, but only superficial interaction for up to an hour, with no more than ten minutes at a time.

(Tr. at 22.)  In contrast, the question addressed to the vocational expert described

> Occasional interactions with supervisors and coworkers <u>but only superficial and incidental interaction with the general public</u>, further defined as no more than about one hour during the workday with no more than approximately 10 minutes occurring during any one sustained period of time.

(Tr. at 80 (emphasis added).)  In comparing these two sets of limitations, Plaintiff contends that the restrictions presented to the vocational expert are less restrictive in terms of interactions with supervisors and coworkers than the restrictions included in the RFC.  This inconsistency means that the ALJ never presented the vocational expert with a hypothetical question that included all of the limitations actually adopted in the RFC.

As discussed above, the claimant bears the initial burden of proving the existence of a disability.  42 U.S.C. § 423(d)(5); <u>Smith v. Califano</u>, 592 F.2d 1235, 1236 (4th Cir. 1979).  Once the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience.  <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1992); <u>Wilson v. Califano</u>, 617 F.2d 1050, 1053 (4th Cir. 1980).  The ALJ may utilize a vocational expert at steps four and five of the sequential evaluation process to assist in determining whether there is work available which this particular claimant can perform.  <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989); <u>Hammond v. Apfel</u>, 5 F. App'x 101, 105 (4th Cir. 2001); <u>see also</u> 20 C.F.R. § 404.1560(b)(2); 20 C.F.R. § 404.1566(e).  However, "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out <u>all</u> of claimant's impairments."

7

Hines, 453 F.3d at 566 (emphasis added) (internal quotation marks omitted); Walker, 889 F.2d at 50-51; see also Fisher v. Barnhart, 181 F. App'x 359, 365 (4th Cir. 2006) (finding no error where the RFC is supported by substantial evidence and the hypothetical question to the vocational expert incorporated that RFC determination).

Here, Defendant argues that the ALJ's error at step five fails to provide a basis for remand. Instead, he contends that the hypothetical question, rather than the RFC, contained the social limitations intended by the ALJ, and that the "inadvertent omission of the term 'general public'" from the RFC assessment itself was a "simple transcription error." (Def.'s Br. [Doc. #15] at 7.) In support of this hypothesis, Defendant notes that in the decision itself, the ALJ explained that "[t]he workplace and nonexertional limitations take into consideration [Plaintiff's] dysautonomia symptoms with chemical sensitivities" (Tr. at 24), and specifically explained that

> "[t]aking into account [Plaintiff's] testimony, reduced interpersonal interactions, **particularly with the public**, are provided, primarily as an accommodation to reduced environmental chemical exposures, as well as limitations in concentration and persistence, secondary to incidental exposure."

(Def.'s Br. at 8) (quoting Tr. at 24-25) (emphasis added by Defendant). Moreover, Defendant argues that, "[b]y any measure of common sense, there would be no reason to determine that the hypothetical claimant could have occasional interaction with supervisors and coworkers and at the same time only superficial interaction for one hour." (Def.'s Br. at 7.)

As Plaintiff correctly notes in her Reply, Defendant's arguments fail to rehabilitate the ALJ's decision. "The RFC is only stated once in the [administrative] decision, [and] it is not apparent that the ALJ inadvertently omitted the term 'general public' from the RFC" as

8

adopted. (Pl.'s Reply Br. [Doc. #16] at 1.) In making this argument, Plaintiff relies on a similar case from within the Fourth Circuit. In <u>Martinez v. Comm'r of Soc. Sec.</u>,

> Defendant argue[d] repeatedly that the ALJ's RFC contain[ed] a 'clear' and 'obvious' 'typographic error' and that it 'strains logic to believe' the ALJ intended to draft the RFC as written. Rather than point to specific findings – for instance, a second recitation of the RFC that substituted <u>hours</u> for <u>minutes</u> as the Defendant urges the Court to do – Defendant merely invites the Court to substitute its judgment for the ALJ's stated findings and re-write the RFC.

No. 5:22-CV-00170-SCR, 2023 WL 4488853, at *4 (W.D.N.C. July 12, 2023) (internal citation omitted). Ultimately, the court in <u>Martinez</u> declined to make speculative findings and instead relied on the stated findings of the ALJ in remanding the case. The same logic applies here. The Commissioner argues that "there would be no reason" for the ALJ to determine that Plaintiff would require both occasional interaction with supervisors and coworkers <u>and</u> only superficial interaction in brief segments totaling up to one hour. However, an obvious possibility presents itself. As Defendant himself points out, the ALJ limited Plaintiff's interpersonal interactions "primarily as an accommodation to reduce[] environmental chemical exposures." (Tr. at 24-25.)[5] Under the Act, a claimant's ability to perform basic work activities generally falls in one of four categories: (1) continuous, meaning no limitation; (2) frequent, meaning from 1/3 to 2/3 of the workday; (3) occasional, meaning from very little

---

[5] In this regard, as explained in the ALJ's decision, Plaintiff's impairments included dysautonomia with chemical sensitivities. Her dysautonomia symptoms included "burning, cold, tingling, and aching, motor symptoms of twitching, and autonomic symptoms of lightheadedness, sweat irregularities, and temperature intolerance from the waist down. Her physician also noted associated hypotension, with no orthostasis found, as well as her diagnoses of migraines and asthma." (Tr. at 23.) The ALJ noted that Plaintiff "testified that her conditions limit her ability to work around perfumes or fragrances" (Tr. at 22), and the consultative examiner noted the need for environmental limitations due to Plaintiff's chemical sensitivities and asthma, based on her reports of asthma attacks, sickness, and loss of ability to function or think when exposed to fragrances, odors, and chemicals, relieved with exposure to fresh air (Tr. at 23, 638). At the hearing, Plaintiff testified that at her prior positions, she received accommodation including a separate office where she could close the door to avoid fragrances of the building, and later an accommodation to work from home. (Tr. at 40-41, 48-49.)

up to 1/3 of the workday; and (4) never. However, in certain circumstances, other terms may fine tune the extent of a claimant's abilities within these broad categories. Here, for example, the nature of Plaintiff's work would require some degree of contact with coworkers and supervisors. Accordingly, "never" was not an option in terms of social interaction. Even so, the ALJ sought to limit Plaintiff's interactions as much as possible in an effort to reduce chemical exposures which could adversely affect her dysautonomia. Thus, it appears, from the RFC as written, that the ALJ attempted to limit the length of exposure and to spread these short exposures throughout the day to lessen their impact on Plaintiff's impairments, thus more precisely defining the most Plaintiff could do within the broader category of "occasional" interaction.

Of course, this may not, in fact, have been the ALJ's intention at all. He may, as Defendant contends, have omitted the term "general public" from the RFC out of inadvertence or carelessness. Alternatively, the ALJ may have intended to include a separate limitation as to the general public in the RFC assessment, such as no interaction, but failed to do so. The crucial point remains that, given the record before it, the Court simply cannot establish whether the ALJ's mistake was in (1) assessing the RFC or (2) formulating the hypothetical to the vocational expert to support the finding at step five of the sequential analysis. As explained in Martinez, 2023 WL 4488853, at *5:

> Defendant merely urges the Court to review the record and conclude that "[b]ecause the ALJ's intent is obvious, the typographical error is not a sufficient basis to remand." This amounts to expecting the Court to infer – or guess – the ALJ's logic, which the Court may not do. See Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013) (noting it is "not our province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]' and it is also not our province—nor the province of the district court—to engage in these [fact-finding] exercises in the first instance.") (quoting

Hancock v. Astrue, 667 F.3d 470,472 (4th Cir. 2012)). Instead, it is Defendant's—and her designee, the ALJ's—obligation to logically explain its decision to deny benefits. Id.; see also Arakas, 983 F.3d at 95; Monroe, 826 F.3d at 179. Although multiple explanations for the present inconsistencies are possible, the hearing decision in its present form does not logically explain the ALJ's decision. Accordingly, remand is required.

Similarly, this Court, like the court in Martinez, must rely on the stated findings of the ALJ. Here, the RFC actually adopted by the ALJ was not adequately conveyed in the hypothetical question to the vocational expert, and the RFC as written and adopted is more restrictive than the hypothetical question to the vocational expert with respect to interactions with supervisors and coworkers. Thus, substantial evidence does not support the ALJ's conclusion that Plaintiff can perform other jobs available in significant numbers in the national economy, and remand is required. Riley v. Chater, 57 F.3d 1067, 1995 WL 361483, at *3 (4th Cir. June 16, 1995) (finding that a vocational expert's testimony that was "based on hypothetical questions that did not encompass all relevant impairments, does not constitute substantial evidence to support the ALJ's decision"); see also Walker, 889 F.2d at 50-51 ("In this case the ALJ did not ask questions that ensured that the vocational expert knew what the claimant's abilities and limitations were. Therefore, his answers to those questions were not particularly useful."). To the extent that Plaintiff's additional allegations merit further consideration, these contentions can be considered by the ALJ upon rehearing.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability IS REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to

the ALJ for proceedings consistent with this Order.  To this extent, Defendant's Dispositive Brief [Doc. #15] is DENIED, and Plaintiff's Dispositive Brief [Doc. #11] is GRANTED.

This, the 27th day of March, 2026.

Joi Elizabeth Peake
United States Magistrate Judge

Case 1:24-cv-00895-JEP    Document 17    Filed 03/27/26    Page 12 of 12